I would grant the writ and review the case in light of the guidelines set forth by this Court in Ex parte Branch,521 So.2d 1035 (Ala. 1987).
As in Branch, the learned trial judge here, at the time he held a hearing to consider the validity of the race-neutral reasons, did not have before him the standards that have now been set out in great detail in the Branch case. Likewise, the Court of Criminal Appeals reviewed the judgment of the trial court without benefit of the guidelines we adopted in Branch;
therefore, I would grant the writ, and review the record to determine whether the race-neutral reasons articulated by the prosecutor during the hearing by the trial court on remand of this case were sufficient under the guidelines set out inBranch.
In Branch, this Court stated several specific factors that should be considered in determining whether the State has used its peremptory challenges in a discriminatory manner. Summarized, and put in the form of questions, they are:
 1. Did the challenged jurors share only one characteristic — their membership in a group — while in all other respects they were as heterogeneous as the community as a whole?
 2. Did the prosecutor use a pattern of striking black jurors on the particular venire?
 3. Were the type and manner of the State's questions on voir dire directed to the venire as a whole or to individual members of the venire and would they support a race-neutral reason for exercising a peremptory challenge relating to the particular case on trial?
 4. Was there disparate treatment of members of the jury venire with the same characteristics; for example, were all jurors who had a particular characteristic stricken?
 5. Was there disparate examination of members of the venire?
 6. Were most of the state's challenges used to strike black jurors?
In Branch, this Court said the following with regard to the State's burden of showing neutral reasons once a prima facie showing has been made:
 "In addition to a clear, specific, and plausible nondiscriminatory explanation of a specific characteristic that affected the decision to challenge, the following are illustrative of the types of evidence that can be used to overcome the presumption of discrimination and show neutrality:
 "1. The state challenged non-black jurors with the same or similar characteristics as the black jurors who were struck.
 "2. There is no evidence of a pattern of strikes used to challenge black jurors; e.g., having a total of 6 peremptory challenges, the state used 2 to strike black jurors and 4 to strike white jurors, and there were blacks remaining on the venire.
 "Batson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)] makes it clear however, that '[t]he state cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties. Rather, the state must demonstrate that "permissible racially neutral selection criteria and procedures have produced the monochromatic result." ' Batson, 476 U.S. at 94, 106 S.Ct. at 1721, citing Alexander v. Louisiana, 405 U.S. 625, 632 [92 S.Ct. 1221, 1226, 31 L.Ed.2d 536] (1972). Furthermore, intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination. Batson, 476 U.S. at 96, 106 S.Ct. at 1723. Finally, a prosecutor cannot overcome the presumption 'merely by denying any discriminatory motive or "affirming his good faith in individual selections." ' Batson, 476 U.S. at 98, 106 S.Ct. at 1723, *Page 1040 
citing Alexander, 405 U.S. at 632
[92 S.Ct. at 1226]."
Because the Court of Criminal Appeals and the learned trial judge did not have before them the specific guidelines ofBranch, and because the race-neutral explanations given here are similar to those given in Branch, I believe that there is probable merit in the petition, and I would grant the writ to review petitioner's claim in light of this Court's recent decision in Branch; consequently, I must respectfully dissent.
JONES and ADAMS, JJ., concur.